895 So.2d 55 (2005)
STATE of Louisiana
v.
Herbert L. MARTIN, Jr.
No. 04-KA-924.
Court of Appeal of Louisiana, Fifth Circuit.
January 25, 2005.
*56 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Shannan H. Huber, Assistant District Attorneys, Twenty-Fourth Judicial District, Parish of Jefferson, Gretna, LA, for Plaintiff/Appellee.
Jasper N. Pharr, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SOL GOTHARD, and JAMES L. CANNELLA.
EDWARD A. DUFRESNE, JR., Chief Judge.
On December 11, 2002, the Jefferson Parish District Attorney filed a bill of information charging defendant, Herbert Martin, Jr., with four counts of simple arson causing damages in excess of five *57 hundred dollars, in violation of LSA-R.S. 14:52. On September 30, 2003, defendant proceeded to trial before a twelve person jury on counts one through three.[1] After considering the evidence presented, the jury found defendant guilty as charged on all three counts. Defendant thereafter filed a motion for new trial which was denied by the trial judge. Following this denial, the court, on October 22, 2003, sentenced defendant to five years imprisonment at hard labor on each count to run concurrently. Defendant now appeals.

FACTS
During the early morning hours of November 30, 2002, Jeremy Groetsch was standing outside his residence preparing to light a cigarette. He heard an explosion and observed a car burst into flames in the parking lot of the Sugar Mills Apartments located across the street from where he was standing. At trial, Groetsch testified that he saw a dark colored sports utility vehicle (SUV) parked next to the apartment complex. Although Groetsch did not see anyone get into the SUV, he saw the door slam and the vehicle being driven out of the parking lot. Groetsch immediately called 911 on his cell phone to report the incident. He described the vehicle as relatively new with tan trim around the wheels and no license plate. As Groetsch observed the police car coming down the street towards the apartment complex, he saw the SUV pull off in the opposite direction.
Officer Jennifer Sedgebeer of the Kenner Police Department was on patrol on the morning of November 30, 2002, when she received a description of a vehicle that had been involved in a crime. She was headed northbound on Williams Boulevard towards the apartment complex when she observed a vehicle that matched the description traveling southbound on Williams Boulevard. Officer Sedgebeer made a U-turn, pulled the car over, and proceeded to conduct a routine traffic stop while waiting for backup to arrive. Officer Linn arrived at the scene of the stop and approached defendant, whose door was open. Linn observed a gun in the driver's side door panel and seized it for safety reasons. Linn then detained defendant while Officer Sedgebeer went to the apartment complex to pick up Groetsch for a possible identification of the vehicle. Groetsch positively identified the vehicle as the one he had seen at the scene of the fire.
The officers subsequently conducted an inventory search of defendant's vehicle and found the SUV's license plate on the floorboard in the rear section of the vehicle and the screws to the license plate in the glove compartment.[2] The officers also found a power screwdriver, the key to one of the victim's vehicle,[3] and a gas can containing flammable liquid on the rear floorboard of the SUV.
Ikia Alexander, one of the victims, also testified at trial. Alexander testified that she had been in a three year relationship with defendant from 1999 to 2002. In November of 2002, she ended her relationship with defendant and took up residence at the Sugar Mill Apartments. Alexander testified that defendant was upset about the breakup, and that he contacted her *58 constantly by e-mail or telephone. He threatened that there would be a funeral unless she broke up with her new boyfriend and returned to him. Defendant sent Alexander an e-mail saying that he could not live without her, and that he was going to kill himself.
Alexander testified that on the night of November 29, 2002, she attended her mother's wedding ceremony. Defendant telephoned Alexander beforehand to tell her that if she did not call him after the wedding, something was going to happen. When Alexander left home on the night of November 29, she used a borrowed car because days earlier, someone had let the air out of the tires of her car, a 1999 Mercury Cougar. In the early morning hours of November 30, 2002, Alexander received a call from her mother, who informed her that her car, which was in the parking lot of the Sugar Mill Apartments, was on fire. By the time she arrived at her apartment complex, the fire had been extinguished. She testified that she did not give anyone permission to set fire to her car.
Two cars parked next to Alexander's car were damaged by the fire. Jon Reinerth testified that he owned a Chevrolet Corsica automobile. On November 30, 2002, it was parked in the parking lot at the Sugar Mill Apartments in Kenner. At 3:30 a.m., a police officer and a firefighter knocked on his door to let him know his car had been involved in a fire. By that time, the fire had been extinguished. He testified that he did not give anyone permission to burn his car. Robin Paul testified that she owned a Ford Mustang automobile. On the morning of November 30, 2002, it was parked in the lot of the Sugar Mill Apartments, where she lived. She heard a bang, and she looked out of her window to see her car was on fire. She also testified that she did not give anyone permission to set her car on fire.

ASSIGNMENT OF ERROR NUMBER ONE
In his first assignment of error, defendant challenges the sufficiency of the evidence used to convict him. He argues that the state provided only circumstantial evidence in its attempt to link him to the crimes, and that the evidence did not exclude every reasonable hypothesis of innocence.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291; State v. Williams, 99-223 (La.App. 5 Cir. 6/30/99), 742 So.2d 604, 607. When circumstantial evidence forms the basis of a conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Williams, 742 So.2d at 608.
When circumstantial evidence is used to prove a case, the trial judge must instruct the jury that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." LSA-R.S. 15:438. This statutory test works with the Jackson constitutional sufficiency test to evaluate whether all evidence, direct or circumstantial, is sufficient to prove guilt beyond a reasonable doubt to a rational jury. State v. Neal, 00-0674 (La.6/29/01), 796 So.2d 649, 657, cert. denied, *59 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).
In State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 83, the Louisiana Supreme Court commented:
On appeal, the reviewing court "does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events." State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, 1020. Rather, the court must evaluate the evidence in a light most favorable to the state and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. Id.

In order to support a conviction for simple arson, the state was required to prove that defendant intentionally damaged the property of another by means of an explosive substance, or by setting fire to the property without the consent of the owner. LSA-R.S. 14:52. Simple arson is a general intent crime. State v. Simmons, 443 So.2d 512, 521 (La.1983). General criminal intent exists "when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." LSA-R.S. 14:10(2).
In addition to the statutory elements of the charged offense, the state is required to prove the identity of the perpetrator. Where the key issue at trial is identity, the state is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Bradley, 03-384 (La.App. 5 Cir. 9/16/03), 858 So.2d 80, 85, writ denied, 03-2745 (La.2/13/04), 867 So.2d 688.
In the present case, we find that the state proved all the elements of the charged offenses. As defendant points out, no witness positively identified him as the perpetrator. There was, nonetheless, strong circumstantial evidence from which rational jurors could have concluded that defendant was the perpetrator. Groetsch testified that his attention was drawn to the fire after he heard an explosion. Groetsch saw a dark SUV near the burning cars. Although he did not see anyone get into the SUV, he saw the door slam and the vehicle being driven out of the parking lot just after the fire began.
Groetsch immediately used his cell phone to call police, and described the SUV as a late model vehicle that was dark with tan trim around the wheels. He said it had no license plate. Minutes later, Officer Sedgebeer stopped defendant only eight blocks away from the scene of the fire, driving a car that matched the description of the suspect vehicle. The police transported Groetsch to the scene of the stop where he positively identified the vehicle as the one leaving the scene of the fire. A gasoline can containing a flammable liquid and a key to Alexander's car were found inside defendant's SUV. Based on the scenario outlined in the testimony, a rational juror could have found that defendant set fire to the cars.
The general intent necessary for commission of the offense could have easily been inferred from the known circumstances. One of the victims, Alexander, testified that she had broken off a relationship with defendant only two weeks before the fire. Defendant had made threatening telephone calls to her, and had sent her harassing e-mails following the breakup. The last telephone call came on November 29, 2002, only hours before the incident.
Moreover, it can be inferred that the cars did not spontaneously combust; that *60 some person purposely started the fire. The person who set Alexander's car on fire would certainly have understood that the cars parked next to it would likely catch fire.
At trial, all three victims, Reinerth, Paul, and Alexander, testified that they did not give anyone permission to set fire to their cars. By that testimony, the state proved the element of lack of consent. Additionally, the state proved that the damage to each car was greater than five hundred dollars. Paul testified that she later filed an insurance claim, and the damages were calculated at $10,000. Her insurer "totaled" the car. Reinerth testified that the fire scorched the side of Reinerth's car, causing about $2,000 in damage. Alexander filed an insurance claim for the damage to her car, and received compensation in the amount of $11,325.69.
Viewing the evidence presented at trial in the light most favorable to the prosecution, we find that the state proved the essential elements of simple arson beyond a reasonable doubt. Accordingly, the arguments raised by defendant in this assigned error are without merit.

ASSIGNMENT OF ERROR NUMBER TWO
In his second assigned error, defendant argues that the trial court erred in instructing the jury on the doctrine of transferred intent.
Before closing arguments, the state submitted to the court a proposed jury charge pertaining to transferred intent. After some consideration, the court decided to accept the state's charge, with some modifications. Defense counsel objected to the charge, arguing that the doctrine applied only to crimes against persons and not to arson, a property crime. The judge overruled the objection, explaining that he believed the doctrine was not limited to crimes against persons.
The judge charged the jury as follows on the doctrine of transferred intent:
Under the doctrine of transferred intent, when a person intentionally commits an offense against one person, and unintentionally perpetrates the same offense against another person or persons, the perpetrator's intent is transferred and his act is as unlawful with regard to the unintended victims as it is to the intended victims.
Defendant complains that the trial court erred in giving the special instruction, and that he was prejudiced thereby.
When considering an allegedly improper jury instruction, a reviewing court must determine whether it is "reasonably likely" that the jury applied the challenged instruction in an unconstitutional manner, not whether it is possible that the jury misapplied the instruction. Victor v. Nebraska, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994); State v. Battie, 98-1296 (La.App. 5 Cir. 5/19/99), 735 So.2d 844, 853, writ denied, 99-1785 (La.11/24/99), 750 So.2d 980. In determining whether it is reasonably likely that the jurors misapplied the instruction, the challenged terms are considered in relation to the instructions as a whole. State v. Battie, supra. The test is whether, taking the instruction as a whole, reasonable persons of ordinary intelligence would understand the charge. State v. West, 568 So.2d 1019, 1023 (La.1990). A conviction will not be reversed on grounds of an erroneous jury charge unless the disputed portion, when considered in connection with the remainder of the charge, is erroneous and prejudicial. State v. Motton, 395 So.2d 1337, 1348 (La.1981), cert. denied, 454 U.S. 850, 102 S.Ct. 289, 70 L.Ed.2d 139 (1981).
*61 The common-law doctrine of transferred intent provides that "a defendant, who intends to kill one person but instead kills a bystander, is deemed the author of whatever kind of homicide would have been committed had he killed the intended victim." Torcia, Wharton's Criminal Law, 15th § 146. As defendant points out, Louisiana courts have thus far applied the doctrine of transferred intent only to crimes against persons. See, State v. Gilliam, 36,118 (La.App. 2 Cir. 8/30/02), 827 So.2d 508, 516, writ denied, 02-3090 (La.11/14/03), 858 So.2d 422 (first degree murder); State v. P.M., 00-1613 (La.App. 3 Cir. 5/2/01), 786 So.2d 857, 859-860 (second degree battery); State v. Henderson, 99-1945 (La.App. 1 Cir. 6/23/00), 762 So.2d 747, 750, writ denied, 00-2223 (La.6/15/01), 793 So.2d 1235 (second degree murder). Our state's courts have not spoken on the doctrine's applicability to crimes against property. However, a survey of jurisprudence from other states shows that the doctrine has been applied only to crimes against persons, primarily murder. See generally, 8 A.L.R.4th 960.
Based on the foregoing discussion, we find that the trial judge may have erred in giving the jury the instruction on transferred intent. However, it is not reasonably likely that the jury applied the charge in an unconstitutional manner. When taken in the context of the instruction as a whole, reasonable persons would understand the charge. The court gave the disputed charge shortly after its instruction on criminal intent. It was clear from the court's charge on intent that, in order to convict on any one count, the jury was required to find general intent as to that count. Moreover, defendant does not show that he was prejudiced by the court's use of the charge on transferred intent.
Accordingly, this assigned error is likewise without merit.

ERRORS PATENT DISCUSSION
We have also reviewed the record for errors patent. LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals no errors that require corrective action.
For the reasons set forth herein, we hereby affirm defendant's convictions and sentences.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] The state dismissed count four of the bill of information.
[2] Defendant had told Officer Sedgebeer that the license plate was not properly displayed because the screws used to attach it had been stolen.
[3] Officer Sedgebeer testified that the key to Alexander's Cougar was found in defendant's vehicle.