TERRI F. LOVE, Judge.
I ¡.The trial court adjudicated J.W.[1] delinquent of illegal possession of stolen things (a backpack). J.W. timely appealed his adjudication.
J.W. contends there was insufficient evidence to adjudicate him delinquent of illegal possession of stolen things. J.W. asserts there was no eyidence that the backpack was stolen and that there was no evidence that he knew or should have known the bag was stolen. The State argues that although its case was founded, in part, on circumstantial evidence, it was reasonable for the trial court to infer that J.W. possessed a backpack that was stolen from a truck and that J.W. knew or should have known the backpack was stolen.
Upon review of the record, we conclude that a rational trier of fact could have found proof of delinquency or guilt beyond a reasonable doubt. Therefore, the delinquent adjudication of illegal possession of stolen things is affirmed.
FACTS AND PROCEDURAL HISTORY
On August 22, 2011, J.W. and an adult female were observed by Sergeant James Clarkston as they rode their bicycles against traffic on Marigny Street. Sergeant Clarkston noticed that J.W. constantly looked back at him as he cycled, which piqued the Sergeant’s attention. He decided to follow J.W. as J.W. turned | -¡onto Burgundy Street. As J.W. turned, Sergeant Clarkston saw J.W. drop a backpack from his back. After discarding the bag, J.W. rode toward Sergeant Clarkston, as directed. J.W. repeatedly denied any wrongdoing and questioned Sergeant Clarkston’s purpose for wanting him to stop. J.W. continued riding at a slow pace during the time the Sergeant spoke to him. J.W. subsequently rode away on his bicycle; the female stopped. Sergeant Clark-ston dispatched a description of J.W., and J.W. was subsequently detained and arrested by other officers, including Officer Lawrence Weathersby, Jr. During the pat-down of J.W., a camera was discovered in his possession. After J.W. was detained, he was relocated to Sergeant Clarkston for identification. Sergeant Clarkston positively identified J.W. as the person who had sped away on the bicycle.
J.W. was charged with one count of illegal possession of stolen things in violation of La.R.S. 14:69. After a hearing, he was adjudicated delinquent of illegal possession of stolen things. J.W. was subsequently ordered to be committed to the *1184 Department of Public Safety and Corrections for six months.
J.W. timely filed this appeal.
LAW AND DISCUSSION
In order to adjudicate a child delinquent, the State must prove beyond a reasonable doubt that the child committed the delinquent act alleged in the petition. La. Ch.Code. art. 883. The standard for the State’s burden of proof in a juvenile delinquency proceeding is “no less strenuous than the standard of proof required in a criminal proceeding against an adult.” State in the Interest of A.G., 630 So.2d 909, 910 (La.App. 4 Cir. 12/30/93). When a conviction is based on circumstantial evidence, Louisiana Revised Statutes 15:438 provides that such evidence “must exclude every reasonable hypothesis of innocence.” State v. Thomas, 2002-1523, |4p. 4 (La.App. 4 Cir. 2/5/03), 840 So.2d 25, 28; citing State v. Langford, 483 So.2d 979, 983 (La. 1986). A court of review must grant great deference to the juvenile court’s credibility determination and assessment of witness testimony. State in the Interest of W.B., 2008-1458, p. 1 (La.App. 4 Cir. 4/22/09), 11 So.3d 60.
In light of the due process protections of the Fourteenth Amendment of the United States Constitution, and in evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The Jackson standard has been held to be the clear standard of review for Louisiana appellate courts by the Louisiana Supreme Court. State v. Brown, 2003-0897 (La.4/12/05), 907 So.2d 1, 18. This standard of review is applicable in juvenile delinquency cases. State in the Interest of C.B., 2009-1114, p. 5 (La.App. 4 Cir. 12/16/09), 28 So.3d 525, 527.
Louisiana Constitution Article V, § 10(B) mandates that an appellate court review both law and facts when reviewing juvenile adjudications. Therefore, as in the review of civil cases, a factual finding made by a trial court in a juvenile adjudication may not be disturbed by an appellate court unless the record evidence as a whole does not furnish a basis for it, or it is clearly wrong. State in the Interest of Batiste, 367 So.2d 784 (La.1979). In sum, we apply the “clearly wrong-manifest error” standard of review to determine whether there is sufficient evidence to satisfy the standard of proof beyond a reasonable doubt. State in the Interest of T.C., 2009-1669, p. 3 (La.App. 4 Cir. 2/16/11), 60 So.3d 1260,1262.
1 ¿Illegal possession of stolen things is defined in Louisiana Revised Statute 14:69(A) as follows:
A. Illegal possession of stolen things is the intentional possessing, procuring, receiving, or concealing of anything of value which has been the subject of any robbery or theft, under circumstances which indicate that the offender knew or had good reason to believe that the thing was the subject of one of these offenses.
Thus, in order to adjudicate a juvenile delinquent of possession of stolen property, “the state must prove, beyond a reasonable doubt, that 1) the property was stolen, and 2) the property was of value, and 3) that the defendant knew or should have known that the property was stolen, and 4) that the defendant intentionally possessed, procured, received or concealed the property.” State in Interest of B.J., 617 So.2d 238 (La.App. 5th Cir.1993); citing State v. Walker, 350 So.2d 176 (La. *1185 1977), writ granted, 369 So.2d 139 (La.1979); State v. Mercadel, 503 So.2d 608 (La.App. 4th Cir.1987); State v. Wilson, 544 So.2d 1300 (La.App. 4th Cir.1989). Illegal possession of stolen property is a general intent crime. State v. Bounds, 38,330 (La.App. 2 Cir. 5/12/04), 873 So.2d 901.

Whether the backpack was stolen

J.W. does not contend the backpack did not have value or that he did not intentionally possess, procure, receive or conceal the backpack. Instead, he argues that there was no evidence adduced at trial that the backpack was stolen and that he knew or should have known it was stolen. J.W. contends the State did not meet its burden of proof at trial as to those elements. We disagree and find there was sufficient evidence to adjudicate J.W. delinquent of the illegal possession of stolen property.
J.W. argues that because no one testified during trial about the ownership of the backpack or about whether it was the subject of a theft or a robbery, then no ^reasonable trier of fact could have adjudicated him delinquent. The State relies on circumstantial evidence, including the physical evidence that linked J.W. to the truck in which the backpack had been located.
Sergeant James Clarkston testified under direct examination that he observed J.W. and a female bicyclist traveling against traffic on a one-way street. He decided to “check them out” after he noticed that the male (later identified as J.W.) kept looking at him. Sergeant Clarkston also stated he noticed a backpack on J.W. After noticing that Sergeant Clarkston was approaching him, J.W. continued riding away from Sergeant Clark-ston and removed the back pack from his shoulders and threw it to the ground. Sergeant Clarkston testified that he pretended he did not see J.W. dispose of the backpack and, that although he called both cyclists, only the female stopped and went to him. J.W. rode away. Sergeant Clark-ston radioed J.W.’s description to other officers. J.W. was subsequently apprehended and returned to Sergeant Clark-ston’s location for identification. Sergeant Clarkston positively identified J.W. as the person he had observed discard the backpack. Sergeant Clarkston, who was the supervisor at the scene, directed Officer Lawrence Weathersby, Jr. to conduct the investigation of the matter.
Sergeant Clarkston further testified that he and Officer Weathersby relocated to the truck from where the backpack had been taken. Sergeant Clarkston witnessed the collection of the fingerprints from the truck’s rear window.
Under cross-examination, Sergeant Clarkston admitted that he did not know how J.W. had come into possession of the backpack and that it could have been J.W.’s bag.
Officer Lawrence Weathersby, Jr. testified that he received a radio call from Sergeant Clarkston about two suspects who had fled from him. Upon making |7contact with J.W., Officer Weathersby observed J.W. traveling at a high rate of speed and riding against traffic. Officer Weathersby testified that when he stopped J.W., J.W. was informed that he was being detained pending an investigation of a car burglary. Officer Weathersby and his partner were tasked with investigating the matter.
During his investigation, Officer Weath-ersby and his partner met with the adult female suspect who executed a rights of arrestee form and told the officers “what she and J.W. had been doing in the area.” Officer Weathersby recovered the discard *1186 ed backpack and returned it to its owner, who was able to identify the bag. After having the bag identified, Officer Weath-ersby returned J.W. to Sergeant Clarkston for identification.
Officer Weathersby testified that after Sergeant Clarkston’s positive identification of J.W., he (Weathersby) relocated to the truck from where the backpack had been taken. Officer Tasha Hunter took latent fingerprints from the exterior portion of the sliding glass on the back of the truck.
The State called Officer George Jackson, a fingerprint examiner for the New Orleans Police Department, as an expert in the taking of and the comparison of fingerprints, to which the Defendant did not object. Officer Jackson testified the latent fingerprints retrieved from the truck window positively matched J.W.’s prints which are stored in an automated fingerprint identification system. Based upon the results of fingerprint comparisons, Officer Jackson was able to identify J.W.’s name, birthdate, sex and race.
We find there was sufficient evidence which could have led a reasonable trier of fact to exclude every hypothesis of innocence and find that J.W. was delinquent of illegal possession of the stolen backpack.

|¡¿Whether J.W. knew or should have known the backpack was stolen

J.W. contends the State failed to prove beyond a reasonable doubt that he knew or should have known the backpack was stolen. We find his argument is without merit.
The third element of the crime of illegal possession of stolen property is that the juvenile knew or should have known that the property was stolen. The Louisiana Supreme Court has observed that the mere possession of stolen property does not create the presumption that the person possessing the property received it with knowledge that it was stolen. State v. Chester, 97-1001 (La.12/19/97), 707 So.2d 973. The state must prove the defendant’s guilty knowledge, which may be inferred from the circumstances of the offense. Id. at 974.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982), rev’d on rehearing (La.1983). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La.R.S. 15:438. However, R.S. 15:438 is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. See State v. Jacobs, 504 So.2d 817 (La.1987).
In this case, Sergeant Clarkston testified that after J.W. saw him, he (J.W.) rode away from him, and as he rode, J.W. disposed of the backpack. Considering the undisputed fact that J.W. discarded the backpack as he continued to ride away |nfrom Sergeant Clarkston, it is reasonable to find that J.W. knew the backpack was stolen.
After the disposal of the backpack, Sergeant Clarkston attempted to talk to J.W., but J.W. fled. At the time Officer Weath-ersby observed him, J.W. was traveling at a high rate of speed. It was not until J.W. was approached by Officer Weathersby that J.W. stopped and was apprehended.
*1187 Flight may be considered as evidence of a guilty mind. State v. Petit, 463 So.2d 749 (La.App. 4th Cir.1985). A defendant’s attempt to flee from police is also viewed as evidence of guilty knowledge. See Illinois v. Wardlow, 528 U.S. 119,124-25, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000), in which the United States Supreme Court commented that “[hjeadlong flight-wherever it occurs-is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such.”
Therefore, viewing the evidence in the light most favorable to the prosecution, we find the State proved beyond a reasonable doubt that J.W. knew or should have known the backpack had been stolen. Accordingly, we reject J.W.’s argument that his possession of the backpack was insufficient evidence to prove that he knew the backpack was the subject of a robbery or theft.
DECREE
After review of the evidence in this ease, we conclude the State proved its case of illegal possession of stolen things beyond a reasonable doubt. Therefore, the delinquent adjudication of J.W. for illegal possession of the stolen backpack is affirmed.
AFFIRMED

. To maintain the confidentiality of the proceedings required by Louisiana Children’s Code Articles 407 and 412, we use initials for the juvenile defendant in this case.